# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

| | |
|---|---|
| In Re: | Chapter 13 |
| Conchitter Hightower Gardner,<br>                              Debtor. | Case No. 16-10063-WHD |

---

| | |
|---|---|
| United Bank Mortgage Co. | |
|                              Movant, | Contested Matter |
| V. | |
| Conchitter Hightower Gardner aka<br>Conchitter Hightower, Debtor, and Melissa<br>J. Davey, Chapter 13 Trustee, | |
|                              Respondents. | |

### NOTICE OF ASSIGNMENT OF HEARING

PLEASE TAKE NOTICE that United Bank Mortgage Co., has filed a Motion for Relief from Stay and

related papers with the Court seeking an order granting relief from the automatic stay.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion for Relief from

Stay in United States Bankruptcy Courthouse, 18 Greenville Street, 2nd Floor, Newnan, GA 30263,

Courtroom 2nd Floor at 9:00 A.M. on March 29, 2018.  Your rights may be affected by the Court's ruling

on these pleadings.  You should read these papers carefully and discuss them with your attorney, if you

have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)  If you

do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider

your views, then you and/or your attorney must attend the hearing.  You may file a written response to the

pleading with the Clerk at the address stated below, but you are not required to do so.  If you file a written

response, you must attach a certificate stating when, how and on whom (including addresses) you served

the response.  Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing.  The address for the Clerk's Office is:  United States Bankruptcy Court 18 Greenville Street, 2nd Floor Newnan GA 30263.  You must also mail a copy of your response to the undersigned at the address stated below.

In the event a hearing cannot be held within thirty (30) days from the filing of said Motion, as required by 11 U.S.C. Section 362, Movant, by and through counsel, waives this requirement and agrees to the next earliest possible date, as evidenced by the signature below. If a final decision is not rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period.

The undersigned consents to the automatic stay remaining in effect with respect to Movant until the court orders otherwise.

Dated:  March 7, 2018

Shapiro Pendergast & Hasty, LLP

*/s/ Lucretia L. Scruggs*

Lucretia L. Scruggs
Georgia Bar No. 371008
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, GA 30346
Phone: 770-220-2535
Fax: 770-220-2665
lscruggs@logs.com

**UNITED STATES BANKRUPTCY COURT**
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| In Re: | Chapter 13 |
| Conchitter Hightower Gardner,<br>　　　　　　　　　Debtor. | Case No. 16-10063-WHD |
| United Bank Mortgage Co.<br><br>　　　　　　　　　Movant,<br><br>V.<br><br>Conchitter Hightower Gardner aka<br>Conchitter Hightower, Debtor, and Melissa<br>J. Davey, Chapter 13 Trustee,<br><br>　　　　　　　　　Respondents. | Contested Matter |

**MOTION FOR RELIEF FROM STAY**

COMES NOW United Bank Mortgage Co., its successors or assigns, ("Movant"), by and through its undersigned counsel, and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362(d) FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.

Conchitter Hightower Gardner (hereinafter "Debtor") filed this proceeding under Chapter 13 of the Bankruptcy Code on January 8, 2016, and remains in possession of the subject property under a plan of arrangement confirmed by this Court.

3.

Movant is the holder or servicer of a loan secured by certain real property now or

formerly known as 548 North 3rd Street, Griffin, GA 30223, in Spalding County, GA.    Copies

of the Security Deed and Assignments (if applicable) are attached hereto as Exhibit "A".   A copy

of the Note is attached hereto as Exhibit "B".

4.

 As of March 5, 2018, the Debtor is due for the February 2018 through March 2018

payments at 428.16 each, for the total amount of $856.32.

5.

On March 30, 2017, Debtor filed a Motion to Retain 2016 Tax Refund (Doc. 48) to retain

funds in the amount of $2,546.03 to obtain repairs to the roof on her home. A Consent Order

Granting Debtor's Motion to Retain 2016 Tax Refund was entered June 15, 2017 (Doc. 54). On

April 24, 2017, Auto-Owners Insurance issued funds for an additional $2,801.61 for roof repairs

(Exhibit "C"). Creditor conducted a property inspection in May that showed no repairs had been

made at that time.

6.

On June 23, 2017, Debtor requested assistance in obtaining additional insurance funds.

Debtor stated that the repairs had not been completed and that the tax refund and insurance funds

had been spent on other expenses. On September 13, 2017, Debtor reported that another tree had

fallen on the home during Hurricane Irma. On December 18, 2017, Debtor reported that

insurance company would not release the estimated $9,000.00 needed to conduct repairs except

as reimbursement. In fact, a check in the amount of $8,726.66 was issued on October 17, 2017

and subsequently cashed by the Debtor on October 23, 2017 (Exhibit "D"). A property

inspection conducted on January 26, 2018 showed that no repairs had been made to the property

and the roof is currently covered with a blue tarp.

7.

As of March 5, 2018, the Unpaid Principal Balance is $27,026.03. According to the

Debtor(s) Schedule A, the property is currently valued at $46,950.00.

8.

Based upon the foregoing facts, there is a lack of adequate protection in the subject

property. The Debtor has continuously left the roof in disrepair, thereby affecting the value of

Movant's collateral. Movant shows that good cause exists to grant relief from the automatic stay

of 11 U.S.C. § 362.

9.

Movant has incurred attorney's fees and cost as a result of filing this motion. These fees

and cost are recoverable pursuant to the loan documents, and Movant seeks leave to recover

these fees and costs under the remedies available therein.

10.

Movant requests that upon entry of an Order granting relief from the automatic stay of

Section 362 said Order also instruct the Chapter 13 Trustee to cease disbursements on Movant's

Proof of Claim.

WHEREFORE, Movant respectfully requests:

a) That the automatic stay under 11 U.S.C. § 362 be modified to allow Movant to

pursue state remedies to protect its security interest in the Property, including,

but not limited to, effectuating a foreclosure sale and gaining possession of the

Property; to contact the Debtor via telephone or written correspondence to

discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

b) That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

c) That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) be waived;

d) That Movant be permitted to offer and provide Debtor with information regarding a potential forbearance agreement, loan modification, refinance agreement, or other loan workout/loss mitigation agreement, and to enter into such an agreement with Debtor;

e) Movant prays, that in the event of an Order granting relief from the automatic stay of Section 362 said Order also instruct the Chapter 13 Trustee to cease disbursements on Movant's Proof of Claim.

f) For such other and further relief the Court deems just and proper.

Dated: March 7, 2018

Shapiro Pendergast & Hasty, LLP

*/s/ Lucretia L. Scruggs*

Lucretia L. Scruggs
Georgia Bar No. 371008
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, GA 30346
Phone: 770-220-2535
Fax: 770-220-2665
lscruggs@logs.com

## CERTIFICATE OF SERVICE

I certify that I am over the age of 18 and that on ___March 7, 2018___, a copy of the

foregoing Notice of Assignment of Hearing was served, together with a copy of the Motion for

Relief from Stay by electronic mail or first class U.S. Mail, with adequate postage prepaid, on

the following persons or entities at the addresses stated below:

Conchitter Hightower Gardner
548 North 3rd Street
Griffin, GA 30223

Nicole R. Stanton
The Cochran Firm Bkr, LLP
Suite 150
547 Ponce de Leon Avenue
Atlanta, GA 30308

Melissa J. Davey
Melissa J. Davey, Standing Ch 13 Trustee
Suite 200
260 Peachtree Street, NW
Atlanta, GA 30303


Dated ___March 7, 2018___

Shapiro Pendergast & Hasty, LLP


_/s/ Lucretia L. Scruggs_
Lucretia L. Scruggs
Georgia Bar No. 371008
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, GA 30346
Phone: 770-220-2535
Fax: 770-220-2665

AFTER RECORDING, RETURN TO:
UNITED BANK MORTGAGE CO.
P.O. BOX 144
GRIFFIN, GA 30224

**EXHIBIT A**

'96 JAN 29 AM 8 49

*L. Altman*

GEORGIA INTANGIBLE TAX PAID

$ 114.00

1-29-96

*Myrtle F. Peeples*
Myrtle F. Peeples
Clerk, Superior Court
Spalding County, Ga.

——————————— [Space Above This Line For Recording Data] ———————————

# SECURITY DEED

THIS SECURITY DEED ("Security Instrument") is given on  JANUARY  25
1996  . The grantor is
CONCHITTER GARDNER

("Borrower"). This Security Instrument is given to

UNITED BANK MORTGAGE CO.                                    , which is organized and existing
under the laws of    THE STATE OF GEORGIA       , and whose address is
505 SOUTH HILL STREET, GRIFFIN, GA. 30223                          ("Lender").
Borrower owes Lender the principal sum of
THIRTY-SEVEN THOUSAND FIVE HUNDRED TEN AND NO/100
                    Dollars (U.S. $     37,510.00     ). This debt is evidenced by Borrower's note
dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not
paid earlier, due and payable on   FEBRUARY  01, 2026            . This Security Instrument secures to
Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the
security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's
successors and assigns, with power of sale, the following described property located in
SPALDING             County, Georgia:

        ALL THAT LOT, TRACT OR PARCELOF LAND MORE FULLY DESCRIBED
        ON THE ATTACHED SCHEDULE "A".

which has the address of         548 NORTH 3RD STREET            ,        GRIFFIN           ,
                                     [Street]                                [City]
Georgia         30223              ("Property Address");
               [Zip Code]

TO HAVE AND TO HOLD this Property unto Lender and Lender's successors and assigns, forever, together
with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now
or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All
of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances
of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the
principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.**  Subject to applicable law or to a written waiver by Lender, Borrower shall pay
to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a)
yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly
leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d)
yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by
Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance
premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to
exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account
under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601
*et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time,
collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due
on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in
accordance with applicable law.

**GEORGIA** -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011  9/90   *(page 1 of 5 pages)*
ALE GA03 6/93 2429

BOOK **1343** PAGE **130**

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

ALE OA00 2/91 2430

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

ALE GA07 2/91 2431

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of : (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 14 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

Form 3011   9/90   *(page 4 of 5 pages)*

ALE GA08 2/91 2432

BOOK **.343**PAGE **133**

If the Property is sold pursuant to this paragraph 21, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

**22. Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waiver of Homestead.**   Borrower waives all rights of homestead exemption in the Property.

**24. Assumption not a Novation.**  Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**25. Security Deed.**  This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**26. Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ 1-4 Family Rider

☐ Graduated Payment Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider

☐ Balloon Rider ☐ Rate Improvement Rider ☐ Second Home Rider

☐ V.A. Rider ☐ Other(s) [specify]

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it. IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public,_____ County

Notary Public, Spalding County, Georgia
My Commission Expires September 21, 1997

_____ (Seal)
CONCHITTER GARDNER          -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

ALE OA09 0/93 2433

EXHIBIT B

# NOTE

JANUARY    25          , 19 96          GRIFFIN        ,  GEORGIA
                                        [City]              [State]
            548 NORTH 3RD STREET, GRIFFIN, GA 30223
                              [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $      37,510.00      (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is UNITED BANK MORTGAGE CO.                                        . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of    7.625    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the      1st      day of each month beginning on MARCH   01          , 19 96  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on FEBRUARY   01        , 2026    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at P.O. Box 144, Griffin, Ga 30224
                                    or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    265.50              .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

MULTISTATE FIXED RATE NOTE- Single Family -FNMA/FHLMC UNIFORM INSTRUMENT          Form 3200  12/83
ALE US15 12/90 1966

**OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

PAY TO THE ORDER OF _____

WITHOUT RECOURSE

This __26th__ day of __January__ 1996.

UNITED BANK MORTGAGE COMPANY,

BY: _Wanda Morris_

Wanda Morris
Assistant Vice-President

_____ (Seal)
CONCHITTER GARDNER     -Borrower

_____ (Seal)
    -Borrower

_____ (Seal)
    -Borrower

_____ (Seal)
    -Borrower

*[Sign Original Only]*

ALE US16 10/93 1967

CLOSING

BOOK **3540** PAGE **2**



Freddie Mac Loan #854410171

Prepared by United Bank
Return to:  P.O. Box 144
Griffin, GA 30224

THIS MODIFICATION IS TO BE EXECUTED IN DUPLICATE ORIGINALS.
ONE ORIGINAL IS TO BE AFFIXED TO THE ORIGINAL NOTE AND
ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE
THE SECURITY INSTRUMENT IS RECORDED.

### LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Modification"), is effective 06/01/2011, Conchitter Gardner ("Borrower") and United Bank ("Lender"), and amends and supplements (1) the Note (the "Note") made by Conchitter Gardner to United Bank, dated  January 25, 1996  in the original principal sum of U. S. $37,510.00 and (2) the Security Deed (the "Security Instrument"), recorded on January 29, 1996  in Deed Book 1343  at page(s ) 129-134, Superior Court Records of  Spalding County, Georgia.  The Security Instrument, which was entered into as security for the performance of the Note, encumbers the real and personal property described in the Security Instrument (and defined in the Security Instrument as the "Property"), which is located at  548 North 3rd Street,  Griffin, Georgia 30223.  That real property is described as follows:

Please see:  EXHIBIT "A"

The borrowers have requested that the Lender modify the terms of the Note and Security Instrument.  The Lender has agreed to do so pursuant to the terms and conditions stated in this Modification.  In consideration of the agreements made in this Modification, and other good and valuable consideration which the parties agree they have received, the Borrowers and the Lender agree that the provisions of this Modification supersede and replace any inconsistent provisions set forth in the Note and Security Instrument.

1.  The Borrower represents that the Borrower is the occupant of the Property.
2.  The Borrower acknowledges that interest has accrued but not been paid and the Lender has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Note and the Security Instrument, and that such interest, costs and expenses, in the total amount of  $3,661.76  has been added to the indebtedness under the terms of the note and Security Instrument.  As of June 1, 2011, the amount, including such amounts which have been added to the indebtedness, payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U. S. $32,911.86.
3.  The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender, until the Unpaid Principal Balance has been paid.  Interest will be charged on the Unpaid Principal Balance at the yearly rate of  7.625%  starting on July 1, 2011. The borrower promises to make monthly payments of principal and interest of U.S. $267.66  beginning on the first day of July 1, 2011, and continuing thereafter on the same day of each succeeding month.  If on  June 1, 2031 (the "Modified Maturity Date"), the borrower still owes amounts under the Note and the Security Instrument, as amended by this Modification, the Borrower will pay these amounts in full on the Modified Maturity Date.  The Borrower will make such payments at 505 South Hill Street or at such other place as the Lender may require.
4.  If at any time the Borrower is in default, the Lender may, at its election, require the Borrower to pay immediately the Unpaid Principal Balance that remains unpaid at that time, all interest that has accrued but not been paid, and any other sums that are evidenced and secured by the Note and Security Instrument.
5.  Except to the extent that they are modified by this Modification, the Borrower will comply with all of the covenants, agreements, and requirements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.
6.  Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Modification, the Note and Security Instrument will remain unchanged and in full effect, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Modification.
7.  If one or more riders are executed by the Borrower and recorded together with this Modification, the covenants and agreements of each such rider shall be incorporated into and shall amend and

supplement the covenants and agreements of this Modification as if the rider(s) were a part of this Modification.
[Check applicable box(es)]

☐ 1-4 Family Rider – Assignment of Rents

☐ Modification due on transfer rider

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Loan Modification Agreement and in any rider(s) executed by Borrower and recorded with it. IN WITNESS WHEREOF, the Borrower has signed and sealed this Loan Modification Agreement.

5 - 31 - 11
_____          _____ (Seal)
Date                                                     Conchitter Gardner
                                                              Borrower


_____          _____ (Seal)
Date                                                     Borrower


5 - 31 - 11
_____          UNITED BANK
Date
                                            BY: Allie Armistead                              -Lender
                                            Senior Attorney, United Bank


Signed, sealed and delivered in the presence of:


_____
Unofficial Witness

Notary Public, Spalding County, Georgia
My commission expires:

Notary Public, Spalding County, Georgia
My Commission Expires March 17, 2___

BOOK 3540 PAGE 292

All that lot, tract or parcel of land situate, lying and being on the east side of North Third Street in the City of Griffin, Spalding County, Georgia, and more particularly described according to plat of Property for Warren M. Pugh, made by Griffin Engineering and Manufacturing Company on November 30, 1959, a copy of which said plat is recorded in Plat Book 5, page 454, Clerk of Superior Court Records, Spalding County, Georgia; and by reference, said plat is incorporated herein and made a part of this description.

BEGINNING at a point where the north property line of Jefferson Street intersects the east property line of North Third Street; thence north 10 degrees 37 minutes west along the east property line of North Third Street 50.7 feet; thence, continuing along the east property line of North Third Street north 0 degrees 45 minutes east 250 feet to POINT OF BEGINNING FOR THIS DESCRIPTION; thence, south 88 degrees 55 minutes east 100 feet; thence, north 0 degrees 45 minutes east 50 feet; thence, north 88 degrees 55 minutes west 100 feet to point on the east property line of North Third Street; thence, south 0 degrees 45 minutes west 50 feet along the east property line of North Third Street to point of beginning for this description, and bounded on the north by Mrs. H. I. Lindsey and Holcombe Johnson; east by Mrs. H. I. Lindsey and Holcombe Johnson; south by Warren M. Pugh; and west by North Third Street.

SCHEDULE "A"

# EXHIBIT C

## CLAIM PAYMENT

356142122

16

*Auto-Owners Insurance*
Life Home Car Business
*The No Problem People®*

NEWNAN CLAIM BRANCH
PO BOX 72809
NEWNAN GA  30271-2809

| CLAIM NUMBER | | PAID DATE | AMOUNT PAID |
|---|---|---|---|
| | | 04/24/2017 | $*****570.70 |
| LOSS DATE | STATUS | | POLICY NUMBER |
| 04/05/2017 | OPEN COVERAGE | | ▇▇▇▇▇▇ |
| INSURED | | | |
| CONCHITTER GARDNER | | | |

RIVERS INSURANCE
PO BOX 1612
JACKSON GA  30233-1804

CONCHITTER GARDNER
548 N 3RD ST
GRIFFIN, GA  30223-3510

| Coverage | Pay_Type | Amount |
|---|---|---|
| Cov B: Other Structures (001: 548 N 3RD ST) | Replacement Cost | $570.70 |

*** Additional payment details available upon request. ***

PAGE  04/19

MTECDC SPALDING CO

7702288337

02:18

05/24/2017

11085 (08-10)

## CLAIM PAYMENT

356142123

17

NEWNAN CLAIM BRANCH
PO BOX 72809
NEWNAN GA   30271-2809

**Auto-Owners Insurance**
Life Home Car Business
*The No Problem People®*

| CLAIM NUMBER | | PAID DATE | AMOUNT PAID |
|---|---|---|---|
| ▉▉▉▉ | | 04/24/2017 | $******431.88 |
| LOSS DATE | STATUS | | POLICY NUMBER |
| 04/05/2017 | OPEN COVERAGE | | ▉▉▉▉▉▉ |
| INSURED | | | |
| CONCHITTER GARDNER | | | |

RIVERS INSURANCE
PO BOX 1612
JACKSON GA   30233-1804

CONCHITTER GARDNER
548 N 3RD ST
GRIFFIN, GA   30223-3510

| Coverage | Pay_Type | Amount |
|---|---|---|
| Tree Debris Removal (Plus) (001: 548 N 3RD ST) | General | $431.88 |

*** Additional payment details available upon request. ***

DETACH HERE AND KEEP FOR YOUR RECORDS

PAGE  03/19

MTECDC SPALDING CO

7782280337

02:18

05/24/2017

# CLAIM PAYMENT

35614212

NEWNAN CLAIM BRANCH
PO BOX 72809
NEWNAN GA  30271-2809

## Auto-Owners Insurance
Life Home Car Business
The No Problem People®

| CLAIM NUMBER | | PAID DATE | | AMOUNT PAID |
|---|---|---|---|---|
| | | 04/24/2017 | | $****1,799.0 |
| LOSS DATE | STATUS | | | POLICY NUMBER |
| 04/05/2017 | OPEN COVERAGE | | | |
| INSURED | | | | |
| CONCHITTER GARDNER | | | | |

RIVERS INSURANCE
PO BOX 1612
JACKSON GA  30233-1804

CONCHITTER GARDNER
548 N 3RD ST
GRIFFIN, GA  30223-3510

| Coverage | Pay_Type | Amount |
|---|---|---|
| Cov A: Dwelling (001: 548 N 3RD ST) | Actual Cash Value | $1,799.03 |

*** Additional payment details available upon request. ***

DETACH HERE AND KEEP FOR YOUR RECORDS

## EXHIBIT D

THIS DOCUMENT HAS A COLORED BACKGROUND, VOID PANTOGRAPH, AND MICROPRINTING IN THE BORDER

AUTO-OWNERS INSURANCE CO. - CLAIM PAYMENT CHECK

# Auto-Owners Insurance

**356605617**

Life  Home  Car  Business
The "No Problem" People®

BANK OF AMERICA, N.A.
23261 RICHMOND

70-2328
719 VA

10/17/2017

**EIGHT THOUSAND SEVEN HUNDRED TWENTY-SIX AND 66/100 DOLLARS**

PAY TO THE
ORDER OF   CONCHITTER  GARDNER

| INSURED: CONCHITTER  GARDNER | |
|---|---|
| CLAIM NUMBER | LOSS DATE |
|  | 09/11/2017 |
| POLICY NUMBER | AGENCY |
|  | 18-0725-00 |

$****8,726.66

IN PAYMENT OF:
acv storm loss less $500 deductible and $757.77 recoverable
depreciation and $201.89 non-recoverable depreciation

SIGNATURE HAS A COLORED BACKGROUND - BORDER CONTAINS MICROPRINTING

4534

02/19
09/20 09/12
$8,726.66

DBC UN****************
DRL GA**********
Cash Check

#18976 10/23/17
B A#068367 CC:
TPS:Atlanta ET
fin BC GA8-893

CC 0102893 TLr 00007
10/23/2017 09:53
Tran 00029

Seq: 76
Batch: 068367
Date: 10/23/1

THIS DOCUMENT MUST BE ENDORSED BY THE PAYEE AS DESCRIBED HEREIN AND IF PAYABLE TO MORE THAN ONE PERSON OR FIRM, MUST BE SEPARATELY ENDORSED BY EACH OF THE PAYEES

SIGNATURE OF PAYEE